The defendant William T. Wiegand is an expert glass cutter, and had a small business manufacturing special laboratory and other glassware. His customers, although not many in number, and to a great extent consisting of colleges and institutions using these special articles of glassware, extended throughout the entire country.
Wiegand was unable to make a financial success of his venture, and on the 11th day of February, 1927, sold his business, good will and name to one Charles M. Gray, of the borough of Vineland, by an agreement in writing, for the express consideration of thirty-five hundred ($3,500) dollars. In said agreement, it was provided that he, Wiegand, should *Page 435 
rent to Gray the buildings wherein the business was conducted, at a rental of twenty ($20) dollars per month, and that he, Wiegand, should be employed in the capacity of manager for forty-five ($45) dollars per week, he to perform such other duties as might be assigned to him from time to time, said employment to continue indefinitely, as long as Wiegand should perform the duties required of him as manager of said business.
Wiegand further covenanted and agreed that he would not at any time thereafter engage directly or indirectly, or concern himself in carrying on or conducting the business of manufacturing or selling glass, either as principal, agent or servant, within the United States, it being understood and thereby expressly declared and agreed that the said business largely consisted of orders from all parts of the United States and the resumption of the said business, either directly or indirectly, by said Wiegand, would injure the party of the second part.
Thereafter, and with the consent of Wiegand, said Charles M. Gray organized a corporation under the name of William T. Wiegand Glass Company, and on the 18th day of February, 1927, Gray sold to the corporation the business, good will and the contract above referred to.
Wiegand remained in the employ of the William T. Wiegand Glass Company for a considerable period when, because of dissension or otherwise, he refused to continue his employment and removed to New York City or elsewhere, where he was employed by one of the principal customers of the William T. Wiegand Glass Company in the grinding and manufacturing of the same class of goods as was made by the complainant. This continued until sometime in June, 1929, when he returned to Vineland, New Jersey (the excuse being given that his return was occasioned by the ill health of his wife).
William T. Wiegand and his wife, Christiana Wiegand, opened a manufacturing plant of their own within a short distance of their old plant, manufacturing therein the same class of goods, and catering to the same customers as he had before selling to Gray, and as the complainant had since its *Page 436 
incorporation. This business was carried on under the name of Christiana Wiegand, and the only employes were William T. Wiegand and a son, Paul Wiegand. Paul Wiegand works only upon piece-work and is paid such sums as the amount of work done by him calls for. No wages are paid to William T. Wiegand and the proceeds of the business goes into a common purse for the support and maintenance of the family.
The bill is filed to restrain them from carrying on this business. There cannot be the slightest doubt but that Wiegand is violating the terms of his agreement with Gray, and if it is legal to enforce that agreement, the complainant is entitled to the relief prayed for. The defense is that the agreement, if enforced, would prevent Wiegand from earning a livelihood. The answer to that is that if he is so prevented, he is prevented by reason of the contract he entered into. It is likewise manifest that it was an element of the sale that he should be employed by the purchaser at a fixed salary so long as he was able to perform the duties which he was called upon to perform. His excuse for discontinuing his employment was that the complainant demanded of him the performance of duties which were not included in the contract. I do not find the facts to be so. Wiegand, apparently temperamental, was intensely nervous and worried because of the mental and physical condition of his son Paul. He became unduly sensitive and insisted upon being the absolute mouthpiece of the company in its contact with the employes, and because the officers of the complainant company did not accede to all of his demands, became indignant and left.
Fleckenstein Brothers' Company v. Edward Fleckenstein etal., 66 N.J. Eq. 252, held: "Where a proprietor of a business has sold the same, and has covenanted not to engage in that business as agent or servant, strangers to the contract, who establish a similar business under the name of the wife of the covenantor, may be enjoined, at the instance of the purchaser of the business, from causing the covenantor to violate the contract by employing him, and holding him out as their active agent and superintendent, with knowledge *Page 437 
that the purchaser is thereby being injured and obtaining a corresponding advantage to themselves in their business."
Stone et al. v. Goss et al. (Court of Errors andAppeals), 65 N.J. Eq. 756, held that "one who is under an express contract, or a contract implied from a confidential relation, not to disclose a trade secret, will be enjoined from disclosing the same, and that other persons who induce an employe to disclose the secret, knowing of his contract not to disclose the same, or knowing that his disclosure is in violation of the confidence reposed in him by his employer, will be enjoined from making any use of any information so obtained, although they might have reached the same result independently by their own experiments or efforts."
Vice-Chancellor Stevenson, in the Fleckenstein Case, supra, said: "In the above cited case, we have one defendant, enjoined from violating his express contract, which the court found to have been proved by the testimony, and the other defendants, who were strangers to the contract, enjoined from committing a tort which consisted in appropriating to their own use through such violation of contract, caused or induced by them, a trade secret which was valuable to the complainants' business and the possession of which was protected by the contract."
The result, therefore, follows that an injunction will be advised restraining the said Wiegand from engaging directly or indirectly or concerning himself in carrying on or conducting the business of manufacturing or selling glass, either as principal, agent or servant, within the United States, and the wife from causing the covenantor to violate the contract by employing him or holding him out as the active worker, agent and superintendent of the business. *Page 438